## England Estate.

Argued January 9, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Lewis H. Van Dusen, Jr.,* with him *Duffield Ash-mead, III, Cuthbert H. Latta,* and *Drinker, Biddle & Reath,* for appellants.

*J. H. Ward Hinkson,* with him *Hinkson & Cantlin,* for appellees.

*Douglas D. Royal,* with him *Harold D. Greenwell, J. Montgomery Forster,* and *Greenwell, Porter, Smaltz & Royal,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, March 17, 1964:

Testator died January 2, 1906, leaving a widow, a son and two daughters. By his will, he created a trust with income to his wife and three children for life. Upon the death of his last surviving child, he directed that the principal of the trust be distributed, ". . . equally amongst the children of my children, who shall then be living, and the issue of such of them as may be deceased, per stirpes, absolutely and in fee."

The last of testator's three children died on April 30, 1962, survived by two children and the two children of a deceased child. Testator's son previously had been survived by three children, one of whom died in 1916 without issue, and his other daughter had died leaving four children. The issue at audit was whether distribution of the principal in remainder to testator's surviving grandchildren was to be per capita or per stirpes. The auditing judge held that the will directed a per capita distribution. This determination, confirmed by the full Orphans' Court of Philadelphia County, resulted in an award of one-ninth of the corpus to each of the eight surviving grandchildren and one-eighteenth to each of the two surviving children of a deceased grandchild. Appellants, the only two children of a deceased child of testator's, take this appeal, contending here, as they did below, that the will directs stirpital distribution.

Our examination and study of the will satisfies us that the auditing judge and the court en banc correctly construed testator's language. We are in full agreement with the adjudication, and we affirm the decree below on the following excerpts from the opinion of the auditing judge:

"In the construction of testamentary writings the testator's intention is all-important; Dinkey Estate, 403 Pa. 179, 182 (1961); Hope Estate, 398 Pa. 470 (1960); Bald Estate, 385 Pa. 176 (1956). If the language employed by the testator in disposing of his estate is plain and clearly discloses his intention, the will interprets itself, and no rules of construction are necessary to aid in its interpretation: Wood v. Schoen, 216 Pa. 425 (1907). See also Wharton Appeal, 373 Pa. 360 (1953); Haydon's Estate, 334 Pa. 403 (1939). It is a matter of common sense, as well as of law, not to attempt to construe that which needs no construction: Brown Estate, 349 Pa. 23, 26 (1944); Reck's Appeal, 78 Pa. 432 (1875); Rzedzianowski's Estate, 148 Pa. Superior Ct. 361 (1942).

"The testator's language in the present case falls squarely within the purview of these truisms. It is so clear, and his intent so plainly evident, that his will interprets itself, leading expressly and inescapably to the conclusion that he intended a per capita distribution of principal among grandchildren and a stirpital distribution among the issue of deceased grandchildren. Such distribution involves no conflict with the provision in the will for stirpital distribution of income to grandchildren and their issue during the continuance of the trust, i.e., *during the lives of testator's children*. Until the death of his last child, testator obviously, and quite naturally, desired to preserve equality among his children in the distribution of income, as against, or in competition with succeeding or substitutionary life tenants, viz.: the children and issue of deceased children. This is the time-honored, almost universal scheme of testamentary distribution of income prior to the termination of a trust. And this is the natural interpretation of testator's language in the present case.

• • •

" '. . . A will must be so construed, if possible, as to give effect to every word employed by the testator and a construction which renders any of the words nugatory and futile must be rejected.' Vandergrift Estate, 406 Pa. 14, 26 (1962). See also: Collins Estate, 393 Pa. 519 (1958); Hollenbaugh Estate, 402 Pa. 256 (1961). We cannot attribute to a testator an intention to write meaningless words into his will, when another construction gives such words intelligent and effective meaning. Irwin's Estate, 304 Pa. 200 (1931). Unless no other conclusion is reasonably possible, an interpretation will not be adopted which makes any of the provisions of a will mere surplusage. Moyer's Estate, 280 Pa. 131 (1924).

"The testator directed that the principal be paid and distributed 'equally amongst the children of my children, who shall then be living, and the issue of such of them as may be deceased, per stirpes, absolutely and in fee.' If we were to award a stirpital distribution we would have to disregard the use of the word 'equally'. This we cannot do.

"In Burleigh Estate, 405 Pa. 373 (1961), in which the testator also used the word 'equally', Mr. Chief Justice BELL said at p. 379: '. . . "Equally", prima facie, means as appellants contend, a per capita distribution among the heirs. However, appellants then admit, as they logically and under the authorities must—Love Estate, 362 Pa. 105, 66 A. 2d 238—that the word "equally" means *equally among heirs of the same class,* but the issue of a deceased member of that class would not take equally with the members of the first class, but would take per stirpes.'

"In Davis's Estate, 319 Pa. 215, 219 (1935), in which the words 'divide in equal shares' were used, the Court said: '. . . Another circumstance pointing toward an intent that the beneficiaries take per capita is the use of the words "divide . . . in equal shares." It is

true, as was said in Ashburner's Est., 159 Pa. 545, at page 547, that such words are no less appropriate to a division among classes than to a division among individuals. But, in the absence of other language disclosing an intention to distribute stirpitally, the words "equally to be divided," "divided into equal parts," and the like, ordinarily favor distribution per capita rather than per stirpes: see Bender's App., 3 Grant 210; Hiestand v. Meyer, 160 Pa. 501; Garnier v. Garnier, supra; Brundage's Est., 36 Pa. Superior Ct. 211.'

"If a stirpital distribution were adopted, the grandchildren, i.e., 'the children of my children', would not all receive equal shares. On the contrary, the two surviving children of testator's son, James, would each receive twice as much principal as would their four cousins, who are the children of testator's daughter, Martha, and fifty per cent more than each of the children of testator's daughter, Clarissa. It would require far more persuasive arguments than have been advanced in support of stirpital distribution in this case to convince the Auditing Judge that when testator directed payment of the principal in remainder 'equally amongst the children of my children' (all of whom were born in his lifetime, before the execution of his will, and were living at his death), he contemplated such an unequal result.

"In Paragraph 4 of the will, the testator indicated that he knew how to make a clear, unequivocal stirpital gift. He created a trust, the income to be paid to his sister, Mary E. Murphy, for the term of her natural life, and upon her death to pay the principal 'to and amongst the children of my said sister, Mary E. Murphy, or the issue of such of them as may be deceased, per stirpes, absolutely and in fee.' The word 'equally' was not used in making this gift. This is most significant. The change in the phraseology of the later gift to the grandchildren is strong evidence of a different

intent. Davis's Estate, 319 Pa. 215 (1935); Reiff v. Pepo, 290 Pa. 508 (1927); Martin v. Grinage, 289 Pa. 473 (1927); Elliott v. Diamond Coal & Coke Company, 230 Pa. 423 (1911).

"The testamentary plan in the present case is an entirely natural one. Ordinarily a person has the same degree of affection and love, as a class, for all of his children and grandchildren. Preference for one member of the class is the exception rather than the rule, and to be effective in a will, must be clearly expressed.

"In Rosengarten Estate, 349 Pa. 32 (1944), the Court said at p. 37: '... It is not unusual for a parent to give income to his children for life until the death of his last surviving child, and then to give the corpus to his grandchildren. Under such a testamentary plan, a gift to grandchildren as a class, of necessity, means a per capita distribution. A study of the philosophy underlying this principle will disclose that when a testator makes a gift to a group of individuals of the same class, he is not mentally dividing them stirpitally, and increasing or decreasing their shares depending upon the fecundity of their parent. He is thinking of each member of the class as an *individual*. Thus a gift to grandchildren, nephews, cousins, etc., as a class, connotes an equal share to each individual of the class, i.e.: per capita.'

. . .

"In the present case all nine* of Thomas Y. England's grandchildren were born in his lifetime, before the execution of his will, and were alive when he died in 1906. Nothing is contained in his will which remotely suggests that he favored any one of his grandchildren over the others. On the contrary, the plain language of the will clearly reveals that he regarded

---

* In actuality, ten, one of whom died in 1916 without issue.

them alike, as the objects of his bounty, and that he wished them to share 'equally' in his estate if they were alive when his last surviving child died.

. . .

"Moreover, we regard Marshall Estate, 377 Pa. 41 (1954) and Corr's Estate, 338 Pa. 337 (1940) as inapposite and readily distinguishable from the instant case. We do not regard the fact that the words per stirpes were underlined, nor the punctuation used in the paragraph under construction, as material or significant in view of testator's clear and unambiguous directions."

There remains for disposition appellee's petition to suppress the supplemental record filed by appellants. The asserted purpose of this supplemental record is to assist this Court in arriving at the intention of the testator and in the interpretation of his will. In view of our decision on the merits, there is no need to discuss the various issues raised in the petition and answer. It is sufficient to observe that the record sought to be suppressed consists entirely of matters not offered before the auditing judge or the court en banc and not made part of the audit proceedings from which this appeal is taken. Therefore, the petition to suppress is granted.

Decree affirmed. Each party to bear own costs.