**In re ESTATE OF Jessie M. TYLER, Deceased**

**Appeal of James L. and Josephine Henry.**

Superior Court of Pennsylvania.

Argued Aug. 13, 2013.

Filed Nov. 13, 2013.

---

Debra K. Wallet, Camp Hill, for appellants.

Howard G. Hopkirk, Office of the Attorney General, Harrisburg, for Charitable Trusts, appellee.

BEFORE: BENDER, P.J., GANTMAN, J., PANELLA, J., DONOHUE, J., SHOGAN, J., LAZARUS, J., MUNDY, J., OTT, J., and WECHT, J.

OPINION BY OTT, J.

James L. and Josephine Henry ("the Henrys" collectively) appeal from the orphans' court's order entered on June 14, 2011, and amended June 23, 2011, in the Court of Common Pleas of Perry County, which found the document dated September 8, 2010 was not a valid codicil to the August 11, 2002 Will of Jessie M. Tyler ("Decedent"), and affirmed the Register of Wills' October 29, 2010 decree denying probate.

On appeal, the Henrys contend the orphans' court erred:

1) in refusing to admit to probate the writing dated September 8, 2010, a legally valid testamentary instrument;

2) in focusing on the plans of the scrivener rather than the intent of Decedent; and

3) in precluding the testimony of Allen Hench, Esquire ("Mr. Hench" or "the scrivener") as to conversations he had with Decedent regarding the preparation of the September 8, 2010 document and which establish her testamentary intent during the drafting of the September 8, 2010 document.

After review of the record, the submissions of the parties, and the applicable law, we affirm in part, vacate in part and remand.

The factual and procedural history of this appeal is as follows:

Decedent executed several wills between 1984 and August 2002. Mr. Hench, the scrivener of the wills, testified he would go to Decedent's home for appointments rather than her visiting his office. After the

discussions, Mr. Hench would prepare a draft of the changes and these documents would be sent to Decedent. After review and further revisions, if required, the new will would be finalized by Decedent's executing it before witnesses. N.T., 4/11/2012 at 10, 14, 21–23.

Decedent's testamentary documents prepared prior to September 8, 2010 were an August 11, 2002 Will ("2002 Will") and a May 31, 2003 Codicil ("2003 Codicil"). The orphans' court found the 2002 Will and 2003 Codicil valid and directed them to be admitted for probate. *See* Order, 6/14/2011; Amended Order, 6/23/2011.

The relevant dispositive and administrative provisions of the 2002 Will are as follows:

[THIRD:] G. I give and bequeath all personal jewelry to Helen B. Muller of Selma, Alabama.

H. I give and bequeath all dining room and bedroom silver to Helen B. Muller of Selma, Alabama.

\* \* \*

[EIGHTH:] A. After the payment of all items referenced above and the payment of all costs of administration, fees, and all expenses, I give and bequeath:

1. Twenty Thousand ($20,000.00) Dollars to my brother Carl Arnold Muller; and

2. Ten Thousand ($10,000.00) Dollars to James L. Henry, who has been a faithful helper to me since Walter's death, without whose help I could not have remained at Valley View.

B. After fulfillment of the directives and gifts provided in subparagraph A above, I give the balance then-remaining in two equal shares to the following:

1. Lehigh University, to establish a trust, the income and principal of which I direct be used to support the internship in the Comparative Lake Study Program of Lehigh University, in memory of Walter S. Tyler and Jessie Muller Tyler, or in the event that the utilization above set forth is not practical, to support other programs at Lehigh University which advance learning and education about the natural environment; and

2. Morris Arboretum of the University of Pennsylvania, in memory of Jessie Muller Tyler, Class of 1930 (B.S.) and 1933 (M.A.) and Walter S. Tyler.

\* \* \*

ELEVENTH: I nominate, constitute and appoint my nephew Carl F. Muller and Allen E. Hench, Esquire, as Co–Executors of this my Last Will and Testament and my Estate.

Exhibit 1, Last Will and Testament executed August 11, 2002.

The only testimony regarding the preparation of the 2002 Will was, "[i]t had been the product of significant work and some revisions and then was finalized in August of 2002." N.T., 4/11/2011, at 15. The original remained with Mr. Hench. Mr. Hench further testified that sometime after August 2002, "[Decedent] had sent me a letter instructing me to change the personal representatives designation and to remove her nephew, Carl F." *Id.* at 19–20.[1] On May 31, 2003, Decedent executed a codicil ("2003 Codicil") to the 2002 Will. The 2003 Codicil amended paragraph ELEVENTH, removing Carl F. Muller as a co-executor and appointing Allen E. Hench as the sole executor.

---

1. The date of the letter was never stated on the record. Although Mr. Hench testified he had the letter from Decedent, it was not made part of the record. *See* N.T., 4/11/2011, at 22–23.

At some time on or before September 8, 2010, Josephine Henry, Decedent's daily caregiver, contacted Mr. Hench and indicated that Decedent wanted to discuss her will. *Id.* at 26. Mr. Hench "made arrangements to go up there." *Id.* Mr. Hench made a photocopy of the 2002 Will for use at the meeting "so I would be familiar with the details." *Id.*

On September 8, 2010, Mr. Hench met with Decedent. Mr. Hench testified, "[w]ell when I got there, not knowing what [Decedent] had in mind, she—she said—when I told her I understood she wanted to talk about her will and seemed upset at first in that, oh, are you thinking I'm ready to die and seemed bothered but then she went into—I just said, well, just to review what you have and then we would review it." *Id.* at 26–27. During the meeting, Mr. Hench made handwritten changes along the top and right margins on the first and third pages of the copy.[2] These changes affected only Paragraphs THIRD G and H,[3] and EIGHTH.

In Paragraph THIRD G, the name of Helen B. Muller as beneficiary was crossed out and the name Mary Jessie Thompson was written below. Decedent signed her name in the margin in close proximity.

In Paragraph THIRD H, the name of Helen B. Muller of Selma, Alabama, was crossed out and the name Helen Virginia Thompson, Downingtown, was written beneath.[4] Decedent signed her name under the word "Downingtown". *See* N.T., 04/11/2011, at 28.

At Paragraph EIGHTH A.1., X's were placed through the entire sentence, and small marks, testified by Mr. Hench as Decedent's signature, were placed in the margin. *See* N.T., 04/11/2011, at 29.

In Paragraph EIGHTH A.2., the amount of $10,000.00 was crossed out, the words "Forty Two (42,000) Thousand" were written in, as well as the words "and Josephine Henry". Decedent signed in the margin under the name of Josephine Henry. *See* N.T., 04/11/2011, at 29.

Paragraph EIGHTH B was changed by striking the words "then remaining in two equal shares to the following" and adding "Carl Arnold Muller. If he is not living I give same to Mary Jessie Thompson". Decedent's signature is directly below the name of Carl Arnold Muller and partially over the word "Lehigh". Large X's were placed through Paragraphs EIGHTH B.1 and B.2, which identified residuary beneficiaries of the 2002 Will, Lehigh University and Morris Arboretum. Mr. Hench signed as a witness in the margin after the last deletions. However, no signature of the Decedent is located next to Mr. Hench's signature. *See* N.T., 04/11/2011, at 31–32.

Significantly, at the top of the first page of the copy of the 2002 Will, Mr. Hench wrote a note to his secretary which states: "Linda, do a codicil that changes third G, third H, 8—eighth to eliminate 8(A)(1) and 8(B) and substitutes for eighth(B) brother, Carl Arnold Muller, in the alternative Mary Jessie Thompson." N.T., 4/11/2011,

---

**2.** This writing has been identified in the orphans' court proceedings as "the September 8, 2010 document". It was entered into evidence as Exhibit 5 at the April 11, 2011 hearing. At the hearing, any changes by Mr. Hench were highlighted in yellow and any signatures of Decedent were highlighted in pink. *See* N.T., 04/11/2011, at 33.

**3.** No appeal was taken to the change of beneficiaries of the specific bequests at Paragraphs THIRD G and H. Mr. Hench testified the prior beneficiaries were both deceased. *See* N.T., 4/11/2011, at 28.

**4.** Mr. Hench testified the name was incorrect as written and it should have been Helen Virginia Wood. *Id.* at 28.

at 35; Exhibit 5. Hench testified the reason for the note was "[t]his was not considered the final product." *Id.* at 35. He also testified the September 8, 2010 document was "my notes and her instructions and her intent and desire that day intended to be typed. It was ultimately typed but never signed. I mean, a codicil, a clean crisp professional looking codicil was prepared." *Id.*

On October 21, 2010 Decedent died, at age 100. On October 27, 2010, Hench submitted the 2002 Will, the May 2003 codicil, and the September 8, 2010 document to the Register of Wills for probate. Two days later, on October 29, 2010, the Register of Wills entered a decree denying probate and issuance of letters for all documents. On November 19, 2010 a petition appealing the October 29, 2010 decree was filed by Mr. Hench and the Henrys.

The orphan's court held a hearing on April 11, 2011 at which Mr. Hench, Ellen P. Hench, his wife, and Carl F. Muller testified. Following the hearing, the orphans' court issued an order, dated June 6, 2011, and entered on June 14, 2011, finding the document dated May 31, 2003, to be a valid codicil to the 2002 Will. The order further found the September 8, 2010 document was not a valid codicil to the 2002 Will, and affirmed the decision of the Register of Wills to deny probate of the September 8, 2010 document. Thereafter, on June 23, 2011 the orphans' court amended the June 6, 2011 order and directed the Register of Wills to grant letters testamentary to Mr. Hench.

The Henrys filed a timely notice of appeal to this Court on July 14, 2011 and the court-ordered concise statement of errors complained of on appeal pursuant to Pa. R.A.P.1925(b) on August 2, 2011. The orphans' court filed its Pa.R.A.P.1925(a) memorandum on December 16, 2011. After oral argument, a panel of this Court, in a 2–1 decision, concluded the orphans' court erred in denying the September 8, 2010 document to probate. The order denying probate was reversed and the matter remanded for further proceedings.

This Court granted *en banc* reargument, the panel's decision, filed December 20, 2012, was withdrawn, and the parties were ordered to file briefs. The issues remain the same.

■■■■ Our standard of review is narrow:

> In a will contest, the hearing judge determines the credibility of the witnesses. The record is to be reviewed in the light most favorable to appellee, and review is to be limited to determining whether the trial court's findings of fact were based upon legally competent and sufficient evidence and whether there is an error of law or abuse of discretion. *Estate of Reichel,* 484 Pa. 610, 400 A.2d 1268, 1269–70 (1979). Only where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence may the court's findings be set aside. *Estate of Masciantonio,* 392 Pa. 362, 141 A.2d 362, 365 (1958).

*In re Bosley,* 26 A.3d 1104, 1107 (Pa.Super.2011).

■■■■ We first consider whether the orphans' court's determination that the September 8, 2010 document is nontestamentary is an error of law.

> No rule regarding wills is more settled than the general rule that the testator's intent, if it is not unlawful, must prevail. Moreover, the testator's intention must be ascertained from the language and scheme of his will; it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to

say, but is *what is the meaning of his words.*

*Estate of Shelly,* 950 A.2d 1021, 1025 (Pa.Super.2008)(internal citations omitted, emphasis in the original), *appeal denied,* 599 Pa. 711, 962 A.2d 1198 (2008).

Our determination focuses on whether we are faced with a document that is testamentary as a matter of law, nontestamentary as a matter of law, or ambiguous, in which case extrinsic evidence is to be considered to resolve the ambiguity.

*Id.* at 1026 (citation omitted).

██ "If the instrument is in writing and signed by the decedent at the end thereof and is an otherwise legal declaration of his intention which he wills to be performed after his death, it must be given effect as a will or codicil, as the case may be." [5] *Kauffman's Estate,* 365 Pa. 555, 76 A.2d 414, 416 (1950). Furthermore, "[i]f a testator intends to make a testamentary gift, it can be done in many ways and in many forms, and the intent, as we have often said, is the pole-star." *Estate of Shelly, supra,* 950 A.2d at 1026 (citation omitted). Here, the Decedent's signature is not at the end of the document. However, it is found next to or near every handwritten interlineation. While Decedent did not sign next to or near the multiple X's written over Paragraphs EIGHTH B.1 and B.2., she did sign under the handwritten name of Carl Arnold Muller in Paragraph EIGHTH B. These contemporaneous signatures by Decedent, if considered alone, could evidence her intention to make changes to the two specific bequests and the residuary clause.

██ However, "if a further or additional act or writing is contemplated by an al-leged testator in order to make a written document his will or codicil, the writing is *nontestamentary* in nature." *Id.* at 1026 (emphasis in original).

The orphans' court found the September 8, 2010 handwritten document to be nontestamentary and not a valid codicil because there was evidence of a contemplated future formal codicil. The judge cited two reasons for his decision. First, the scrivener's use of a copy of the August 11, 2002 Will to handwrite changes to paragraphs THIRD G and H and EIGHTH A and B. And second, the scrivener's written directive to his secretary to prepare a codicil. Upon finding the document was nontestamentary, the introduction of extrinsic evidence of Decedent's testamentary intent was precluded.

██ In our review, we keep in mind:

The cardinal rule in the construction of wills is to find the testator's intent. Such intent, whether it be to discover testamentary intent or its meaning as a matter of will construction, is best arrived at by placing one's self in the position of the testator and reading the will from that standpoint.

*In re Kauffman's Estate, supra,* 76 A.2d at 425.

██ Here, since the 2010 document contained *indicia* of a testamentary writing, as well as *indicia* that a future document was contemplated, we conclude the orphans' court judge erred in finding as a matter of law that the document was nontestamentary. *See Estate of Shelly,* at 1026.

██ The September 8, 2010 document is ambiguous and the record does not contain sufficient extrinsic evidence to permit

---

5. " 'Will.'—Means a written will, codicil or other testamentary writing." 20 Pa.C.S. § 102.

a determination of Decedent's testamentary intent. Therefore, we must remand this matter to the orphans' court to conduct hearings on that issue.

The record is silent as to why Decedent signed at various places on the September 8, 2010 document and whether Decedent ever signed handwritten changes to prior wills or codicils in advance of execution.

Significantly, there is no testimony as to Decedent's health and whether, given her age, she believed she would be unable to wait for a final document, as was her prior practice in preparing her 2002 Will and 2003 Codicil. Nor does the record reflect whether the Decedent was ever presented with or reviewed the final document prepared by Mr. Hench in the six weeks prior to her death.

Accordingly, we vacate the portion of the orphans' court's order entered June 14, 2011, as amended on June 23, 2011, that affirmed the decision of the Register of Wills to deny probate of the September 8, 2010 document and remand for actions in accordance with this opinion. The order is otherwise affirmed.

Order affirmed in part; vacated in part. Case remanded. Jurisdiction relinquished.

WECHT, J., files a dissenting opinion, in which MUNDY, J., joins.

DISSENTING OPINION BY WECHT, J.

I agree with the learned majority's conclusion that the orphans' court erred in finding Decedent's September 8, 2010 handwritten document to be nontestamentary. See Maj. Op. at 803. I believe that sufficient indicia exist on this record, namely Decedent's and witness' signatures, to determine that the September 8 document is a testamentary writing that needs no further testimony to establish its validity. I would admit the document to probate, without more. I perceive no cause for further hearings. Accordingly, I respectfully dissent.

The September 8 document was a copy of Decedent's prior August 2002 will, with material handwritten changes. Those alterations were written by Attorney Hench. However, below or adjacent to each such change, Decedent undisputedly signed her name. The document also was signed by Attorney Hench as a witness.

"If the instrument is in writing and signed by the decedent at the end thereof and is an otherwise legal declaration of his intention which he wills to be performed after his death, it must be given effect as a will or codicil, as the case may be." *In re Kauffman's Estate*, 365 Pa. 555, 76 A.2d 414, 416 (1950). If a writing was made with "the intent to make that writing, not a future writing, a testamentary disposition," the writing manifests the requisite testamentary intent. *In re Ritchie's Estate*, 480 Pa. 57, 389 A.2d 83, 87 (1978).

Mr. Hench attempted to probate the September 8 document, but it was rejected by the register of wills. "[W]here a paper is proposed for probate and its testamentary character is challenged, it is incumbent upon the court, in the first instance, to examine the paper, its form and its language, and determine therefrom as a matter of law whether or not it shows testamentary intent with reasonable certainty." *Estate of Logan*, 489 Pa. 29, 413 A.2d 681, 682 (1980).

[E]xtrinsic evidence of testamentary intent is inadmissible where a writing is clearly a will; it is only where there is a real doubt or real ambiguity as to the character of the writing and the intent of the decedent as expressed therein, that extrinsic evidence will be admissible to show the intent of the decedent. In other words if the paper sought to be

probated is free from ambiguity on its face, extrinsic evidence as to the maker's intention is inadmissible.

*In re Moore's Estate,* 443 Pa. 477, 277 A.2d 825, 826–27 (1971).

A review of the September 8 document demonstrates that Decedent's intention was that the document operate as a testamentary writing. Mr. Hench made changes to the will copy at Decedent's direction. Decedent affixed her signature immediately below or next to every alteration that Mr. Hench made to the will. There was no reason for Decedent to sign at each change or for Mr. Hench to witness the document unless Decedent intended the September 8 document to be testamentary. There is no logical reason for Decedent to sign the document if that document aimed merely to serve as Mr. Hench's notes to be used in drafting a final version. To hold otherwise necessarily renders the signatures of Decedent and Mr. Hench irrelevant. They are not.

The sole basis for suggesting that the September 8 document was nontestamentary is the note at the top, in which Mr. Hench directs his secretary to prepare a clean copy of the will. However, this note tells us only about Mr. Hench's intent. It does not speak at all to Decedent's. There is no evidence whatsoever to indicate that Decedent was asking Mr. Hench to take notes for a document be created at a future time. *Compare In re Richards' Estate,* 439 Pa. 5, 264 A.2d 658 (1970) (holding the decedent's letter to an attorney to be a nontestamentary direction to prepare a will). Decedent dictated her wishes, and then memorialized and confirmed her changes with her signature. Decedent took the additional step of having the document witnessed. There can be no doubt that the signatures demonstrated Decedent's testamentary intent. Our courts are bound to vindicate that intent.

In this context, I find instructive the rationale in *Kraus Estate,* 57 Pa. D. & C.2d 188 (Montgomery Cty.1972), *aff'd per curiam,* 448 Pa. 529, 291 A.2d 770 (1972). In that case, the testator altered a copy of his will to add a bequest, to cross out a bequest, and to cross out one of three named executors. In concluding that the modifications were not rendered ineffective by reason of the fact that they were made using a copy rather than the original will, the court reasoned that: "[t]he copy was a handy vehicle for testator's purposes, nothing more, and amendments to a will which could manifestly have been made on a blank sheet of paper should not lose their effect because testator utilized a format already in existence." 57 Pa. D. & C.2d at 189.

Had Decedent made her changes on a blank sheet of paper and signed that document after the names of the new beneficiaries, that document would have operated to revoke the bequests to the prior residuary beneficiaries. Such a codicil would revoke the prior bequests even without mentioning them. *See In re Grimm's Estate,* 442 Pa. 127, 275 A.2d 349, 357 n. 13 (1971) ("Where a will and codicil are in conflict, the codicil provisions prevail."). As in *Kraus Estate,* there is no reason that the amendments that would be effective if made on a blank sheet of paper should be found ineffective simply because they were written on a copy of the will.

I also would find that the September 8 document complies with the requirements of 20 Pa.C.S.A. § 2502 that "[e]very will shall be in writing and shall be signed by the testator at the end thereof...." Pennsylvania courts have held that the requirement that the signature be "at the end" does not necessarily mandate that no writing whatsoever may appear below the signature. *See In re Kehr's Estate,* 373 Pa. 473, 95 A.2d 647 (1953) (holding that a

signature below the words "null and void," but at the top of a will, was sufficient to revoke, as the signature appeared at the end of the language used to express intent); *In re Beaumont's Estate,* 216 Pa. 350, 65 A. 799 (1907) (admitting to probate a will written in a ledger when additional entries, but not additional disposition of property, followed the signature); 20 Pa. C.S.A. § 2502(1).

Decedent signed below all of the alterations in the September 8 document, save for one. On Paragraph Eighth, alterations were made to sub-paragraph A, changing specific bequests to Decedent's brother and her caretakers. Decedent signed below those names. Changes also were made to sub-paragraph B, the residuary clause. In the August 2002 will, the residue of Decedent's estate was left to Lehigh University and to the Morris Arboretum. In the September 8 document, these bequests were crossed out. Above the crossed-out portion, at Decedent's direction, Mr. Hench inserted Decedent's brother as the residuary beneficiary and named an alternate in the event Decedent's brother pre-deceased Decedent. Decedent signed the September 8 document below the new names, but above the crossed-out portion.

Our General Assembly has instructed that "the presence of any writing after the signature to a will ... shall not invalidate that which precedes the signature." 20 Pa.C.S.A. § 2502(1). The only things that appears after Decedent's signature under the names in sub-paragraph B were the crossed-out names of the prior residual beneficiaries. Because the presence of that strike-out would not invalidate the writing that preceded the signature, the new residual beneficiaries were valid. The alterations were valid regardless of whether Decedent's signature was before or after the crossed-out residuary clause.

I would hold that the orphans' court erred in denying probate of the September 8 document. I would further hold that no additional hearing is necessary to determine that the September 8 document is a valid codicil or to establish Decedent's testamentary intent. Decedent's intent is abundantly clear from the evidence already of record. Therefore, I respectfully dissent.