459 A.2d 740

In re ESTATE OF S. Griswold FLAGG, Deceased.

Appeal of Carol F. STEVENS, William D. Flagg, and Michael Flagg.

Supreme Court of Pennsylvania.

Argued Jan. 27, 1983.

Decided April 29, 1983.

Joseph A. O'Connor, Jr., Philadelphia, for appellant.

L. Pierre Teillon, Jr., Philadelphia, for appellee.

William C. Bullitt, Raymond K. Denworth, Jr., Philadelphia, for Thom. King Flagg.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

ROBERTS, Chief Justice.

■ At issue on this appeal is the intended scheme of distribution of income from a marital deduction trust over which testatrix Dorothy King Flagg exercised a testamentary power of appointment. As did the auditing judge, we find that testatrix clearly intended the income from this trust, when combined with the income from the residuary trust established in her husband's will, to benefit each of her children's lines equally. Accordingly, we affirm.

Testatrix's husband, S. Griswold Flagg, died on September 14, 1953, leaving a will dated December 15, 1952. In Item Sixth of the will he established a marital deduction trust for the benefit of his wife, giving her a general testamentary power of appointment over the principal. In Item Seventh he created a residuary trust for his wife and, after her death, for his issue. Testatrix and her husband had three children: David H.K. Flagg, who died in 1961, unmarried and without issue; Dorothy Mary Flagg, who died in 1968 survived by one child, appellee Thomas King Flagg; and S. Griswold Flagg, Jr., who died in 1978 survived by three children, appellants Michael Flagg, Carol Flagg Stevens, and William D. Flagg.

Testatrix died on August 5, 1973, leaving a will dated April 8, 1960. In Item Fourth of the will she exercised her power of appointment over the marital deduction trust, directing her trustees

"(b) To pay over and distribute the net income from said trust in quarterly installments to and among such of my issue living upon each distribution date in such shares and amounts as my Trustees may in their sole discretion deem fair and equitable after taking into consideration the income payable under Item Seventh (c)(1) of the Will of my husband, in order to achieve the maximum equality among my three children while living, and, following their respective deaths, among the survivors and descendants of such of my children as may be deceased, it being my intention to achieve, through the addition of the income of this separate trust to the income of the trust established under Item Seventh (c)(1) of the will of my late husband, equality of distribution among my three children and their descendants upon the principal [sic] of representation, and I direct that any distribution made by the Trustees in their discretion shall be conclusive and binding upon my beneficiaries. I direct further that nothing herein shall affect the distribution to my daughter-in-law, ELIZA-BETH NICHOLS FLAGG, of her share of my husband's estate, it being my intention hereby to provide solely for my children and their descendants.

(c) Upon the expiration of twenty-one (21) years after the date of death of the last survivor of my children and all of my children's issue living at the date of my said husband's death, this trust shall terminate and the principal thereof shall be distributed, per stirpes, among my then living issue."

Item Seventh (c) of the will of testatrix's husband provides:

"(c) After the death or remarriage of my wife (or my death, if she predeceases me), to distribute the income annually, in not less than quarterly installments, as follows:

42

(1) For the period of their respective lives, Twenty Thousand Dollars ($20,000), to my son S. Griswold Flagg, and after his death Ten Thousand Dollars ($10,000) to his wife, Elizabeth Nichols Flagg; Fifteen Thousand Dollars ($15,000) to my daughter Dorothy Mary Flagg Biddle; and Ten Thousand Dollars ($10,000) to my son David H.K. Flagg. If in any year the income is insufficient to pay the foregoing amounts to my children and to Elizabeth Nichols Flagg, then the foregoing distributions of income shall be reduced pro rata.

(2) Upon the death of any of my three children, his or her issue shall receive, per stirpes, the amount which such child would have received if living; and, to the extent that the income for any year may be sufficient after provision for income distributions under subparagraph (1) above, an additional amount of income to each of such issue as is sufficient to provide a total income distribution of Twenty Thousand Dollars ($20,000) to each of such issue. If the additional income is not sufficient to pay Twenty Thousand Dollars ($20,000) to each of such issue, such additional amount of income as is available shall be distributed among such issue in a manner which will make their total individual incomes hereunder as nearly equal as possible.

(3) My Executors and Trustees, in their sole and absolute discretion, are further authorized and directed to pay out of any income in excess of the amounts to be distributed to my children and their issue as aforesaid, and out of principal if there be no such excess of income, such expenses as may result from illness or similar emergency afflicting any of such income beneficiaries; provided, however, that it first be established that the beneficiary is financially unable to pay such expenses and that bills or similar vouchers for such expenses are submitted to and approved for payment by my Executors and Trustees.

(4) If the income for any year exceeds the amounts to be distributed to my children and their issue as afore-

said, such excess shall be paid over in the proportions of two-fifths (⅖ths) to THE CHURCH FOUNDATION, two-fifths (⅖ths) to THE CHURCH FARM SCHOOL, Glen Loch, Pennsylvania, and one-fifth (⅕th) to the SEAMEN'S CHURCH INSTITUTE OF PHILADEL-PHIA, Philadelphia, Pennsylvania; provided, however, that my Executors and Trustees may, in their uncontrolled discretion, vary the foregoing proportions to meet the current needs of any one of these organizations."

At the present time, this trust yields sufficient income to permit the maximum distribution of $20,000 a year to each of the four grandchildren.

In the course of an audit of the account of the trustees of the marital deduction trust occasioned by the death of S. Griswold Flagg, Jr., the father of appellants, the trustees filed a petition for adjudication in the Orphans' Court Division of the Court of Common Pleas of Montgomery County, seeking judicial approval of their proposed distribution of income to testatrix's grandchildren. Prior to his death, the trustees had divided the income from this trust equally between S. Griswold Flagg, Jr., and appellee Thomas King Flagg, the sole issue of testatrix's daughter. In their petition for adjudication, the trustees proposed to continue to distribute one half of the income to appellee and to divide the remaining half among appellants, the three children of S. Griswold Flagg, Jr. Appellants objected to the proposed distribution, arguing that the income should be divided equally among all four of testatrix's grandchildren on a per capita basis. On May 22, 1980, the auditing judge (Taxis, J.) held, consistent with the position of appellee, that appellee "is entitled to receive enough income from the Marital Deduction Trust so that what he receives from both trusts equals one-half the aggregate income of both trusts." On October 31, 1980, the court dismissed appellants' exceptions

and confirmed the adjudication absolutely. This appeal followed.[1]

■ "It is, of course, a cardinal rule that a will is to be construed according to the intent of the testator. . . . To ascertain this intent, a court examines the words of the instrument and, if necessary, the scheme of distribution, the circumstances surrounding the execution of the will and other facts bearing on the question." *Sykes Estate,* 477 Pa. 254, 257, 383 A.2d 920, 921 (1978). Accord, e.g., *Hamilton Estate,* 454 Pa. 495, 312 A.2d 373 (1973). Only if the intent does not appear with reasonable certainty will a court resort to canons of construction. *Houston Estate,* 491 Pa. 339, 421 A.2d 166 (1980). Accord, *McDowell National Bank v. Applegate,* 479 Pa. 300, 388 A.2d 666 (1978); *Sykes Estate,* supra.

Here, we need not look beyond the language of the will itself, for testatrix has clearly and specifically stated her "intention to achieve, through the addition of the income of this separate trust to the income of the trust established under Item Seventh (c)(1) of the will of my late husband, equality of distribution among my three children and their descendants upon the principal [sic] of representation . . . ."

■ The words "upon the principle of representation" clearly refer to a stirpital scheme of distribution. See, e.g., *Corr's Estate,* 338 Pa. 337, 12 A.2d 76 (1940). It is also clear that testatrix intended that her children be the stirpes and that her grandchildren take their parents' shares. Nowhere in Item Fourth of her will does testatrix refer to her grandchildren as a discrete class; rather she refers to "my children and their descendants," and in providing for the

1. Appellants maintain that the holding of the auditing judge effects an absurd result, inasmuch as it would permit appellee to receive compensating income from the marital deduction trust not only for the difference between the amount received by appellants and that received by appellee from the residuary trust (presently $40,000) but also for any excess residuary trust income distributed to charity pursuant to Item Seventh (c)(4) of the will of testatrix's husband. It is clear, however, from a reading of the court's full opinion, as well as from appellee's position throughout these proceedings, that the court held that appellee is entitled to an amount equivalent to one half of the aggregate income *payable to the grandchildren* from both trusts, and nothing more.

termination of the trust, she directs that the principal be distributed "per stirpes among my then living issue." It is well settled that "where the word 'descendants' or 'issue' is unexplained in the context of the instrument, children do not take concurrently or per capita with their parents, but take per stirpes." *Mayhew's Estate,* 307 Pa. 84, 91–92, 160 A. 724, 727 (1932). Accord, *Grimm Estate,* 442 Pa. 127, 275 A.2d 349 (1971).[2]

Appellants contend that testatrix's statement of her intention with regard to income distribution is rendered ambiguous by testatrix's direction to her trustees to take "into consideration the income payable under Item Seventh (c)(1) of the Will of my husband," and her reference to the "income of the trust established under Item Seventh (c)(1) of the Will of my late husband." According to appellants, because Item Seventh (c)(1) of Mr. Flagg's will refers only to income payments to his children and Item Seventh (c)(2) prescribes the distribution of income to his grandchildren, any reference by testatrix to Item Seventh (c)(1) became meaningless following the death of the last surviving child of testatrix and her husband. Thus, appellants argue, as there is no longer any "income payable under Item Seventh (c)(1)" for the trustees to take into consideration, testatrix's stated intention to achieve equality upon the principle of representation must be disregarded and the matter resolved by canons of construction. Alternatively, appellants argue that, if testatrix did intend a stirpital distribution of marital deduction trust income to her grandchildren, that distribution should be made without regard to income payments from Mr. Flagg's residuary trust made pursuant to Item Seventh (c)(2).

**2.** It is apparent that testatrix knew how to effect a per capita distribution when she wished to. In Item Fifth of her will, she directs that following the death of her daughter Mary, income from the residue of her estate be distributed "to such of my children and grandchildren as may be living on any income payment date, per capita and not per stirpes." Testatrix further provided that in the event of a grandchild's death, "the share of income to which such grandchild would be entitled if living shall be paid to his or her issue per stirpes."

■ Appellants' attempt to read ambiguity or an intended limitation into testatrix's references to Item Seventh (c)(1) of her husband's will cannot succeed in the face of testatrix's clear expression of her intention "to achieve equality of distribution ... upon the principal [sic] of representation" "through the addition of the income of [the marital deduction] trust to the income of the trust established under Item Seventh (c)(1) of the will of my late husband." Although testatrix's husband's residuary trust is established by Item Seventh in its entirety and not by Item Seventh (c)(1) alone, there is, of course, only one trust that has been established. Absent any evidence to support the assumption that testatrix intended to divide her husband's single, cohesive trust plan into two separate instruments, testatrix's reference to "the trust established under Item Seventh (c)(1)" must be read as encompassing the entire residuary trust.

■ So, too, it is far more reasonable to view testatrix's direction to her trustees to take "into account the income payable under Item Seventh (c)(1)" as a shorthand reference to all income payable throughout the life of the trust than to infer from this phrase alone that testatrix intended to alter her scheme of distribution dramatically upon the death of her last surviving child. As the auditing judge observed, the initial language of Item Seventh (c)(2), directing that the issue of a deceased child "shall receive, per stirpes, the amount which such child would have received if living," depends for its meaning on the directions for distributions to children contained in Item Seventh (c)(1). Thus, appellants' contention that the death of testatrix's last surviving child rendered testatrix's reference to Item Seventh (c)(1) of no further effect must be rejected.

Finally, we note that both the residuary trust of testatrix's husband and the marital deduction trust appointed by testatrix's will terminate identically with a per stirpes distribution of principal to the "then living issue" of testatrix and her husband. Should the trusts terminate, as they may, during appellee's lifetime, appellee will receive one half of

the principal of each trust. In *Wanamaker Estate*, 399 Pa. 274, 281, 159 A.2d 201, 204 (1960), this Court stated:

"It is unusual for a testator to intend and direct per stirpes distribution of income among a specified class ... and a per capita distribution of principal among the same class, ... with the result that certain grandchildren would receive a per stirpes share of income on Tuesday, but on Wednesday (the next day when the youngest heir or grandchild reached 21 years of age) would receive a per capita share of principal. If that was the testator's intent, it should be clearly expressed ...."

Similarly here, where testatrix has stated her intention to effect a stirpital distribution of the income from both trusts consistent with the distribution of principal upon termination, testatrix's two incomplete but entirely understandable references to her husband's residuary trust do not provide a basis for disturbing her consistent scheme of distribution.

Decree affirmed. Each party to pay own costs.