652 A.2d 1330

In re DEED OF TRUST OF Grant McCARGO Dated December 4, 1929 as Amended, Deceased.

John H. Follansbee, III, Laura Follansbee McCall, Melissa Follansbee, Wendy L. Follansbee and Megan Follansbee Smith, Appellants.

In re DEED OF TRUST OF Grant McCARGO DATED DECEMBER 4, 1929 AS AMENDED, DECEASED.

Elizabeth Bailey Seybolt, Margaret McCargo Seybolt, Meriwether L. Hardie, Charlotte L. Hardie, Page D. McCargo, Richard C. Moses, III, Tarrant G. Moses, Ronson Samuel McCargo Moses, Darian Lee Moses, Remington Morgan Moses, Remington Elizabeth Moses, Christopher Michael Bell, Alphonzo Robert Bell, William Baird Standish, Carolyn Standish Kaemmer, Hannah Margretta Kaemmer, Peter McCargo Standish, III, Christopher R. Standish, Jr., Jessica Richards Standish, Eleanor McCargo Standish, Peyton R. Smith, Jr., Margot F. Smith, Grant B. Smith and Gretchen E. McCall, Appellants.

In re DEED OF TRUST OF Grant McCARGO Dated December 4, 1929 as Amended, Deceased.

Margaret Meyer Seybolt and Edward B. Meyer, III, Appellants.

Superior Court of Pennsylvania.

Argued June 13, 1994.

Filed Nov. 14, 1994.

Reargument Denied Jan. 27, 1995.

572

Kenneth E. Lewis, Pittsburgh, for Follansbee.

Andrew W. Forsyth, Jr., Pittsburgh, for Guardian Ad Litem, participating party.

Guy L. Warman, Pittsburgh, for Grant McCargo, III, Diana McCargo Hardie, Heather Mary McCargo and Thomas Wright McCargo, participating parties.

Thomas F. Nelson, Pittsburgh, for Peter Standish, William McCargo, David McCargo, Grant McCargo and Marian McCargo Bell, participating parties.

John J. Lombard, Jr., Philadelphia, for Margaret Seybolt and Edward B. Meyer, III.

Before KELLY, FORD ELLIOTT and BROSKY, JJ.

FORD ELLIOTT, Judge:

We review three separate appeals arising from two separate orders of court. The appeals at No. 1560 Pittsburgh 1993 and No. 1609 Pittsburgh 1993 are taken from an order entered September 17, 1993. Although none of the appeals has been consolidated with any other,[1] in the interests of judicial economy, we shall resolve them all together.

These appeals come before us following a declaratory judgment action filed September 15, 1992, in the Orphans' Court Division of the Court of Common Pleas of Allegheny County. Petitioners therein sought to obtain from the court an interpretation of a deed of trust created by their common ancestor, Grant McCargo, on December 4, 1929.[2] This petition was joined in by David McCargo, the sole surviving child of Grant McCargo,[3] by all but one of the living grandchildren of Grant McCargo,[4] and by all but one branch of the great-grandchildren of Grant McCargo. That branch, consisting of five great-grandchildren born to the now deceased grandchild Margo McCargo Follansbee, took a contrary position to the petitioners. The Follansbee great-grandchildren are our appellants at No. 1560 Pittsburgh 1993.

The dispute below was originally resolved by the Honorable Robert A. Kelly by order and opinion rendered July 21, 1993. Prior to that adjudication the court had appointed a Guardian *ad Litem* to represent the interests of the minor descendants and a Trustee *ad Litem* to represent the interests of the unborn and unascertained descendants. The Trustee *ad Litem* adopted a position in agreement with the petitioners.

1. We note that two of the three appeals were listed at the same argument number, although they were not consolidated.

2. The trust was made contemporarily with a will dated December 3, 1929. The trust agreement was amended December 25, 1935.

3. David McCargo has since died on March 13, 1993.

4. Grandchild William Standish did not join. We note that the Honorable William Standish currently sits as a judge of the United States District Court for the Western District of Pennsylvania and formerly sat as a judge of the Court of Common Pleas of Allegheny County.

The Guardian *ad Litem* agreed with the view of the Follansbee great-grandchildren. The Guardian *ad Litem* is the representative appellant at No. 1609 Pittsburgh 1993.

Following the original adjudication, exceptions were filed and on September 17, 1993, an *en banc* panel of the Orphans' Court Division dismissed all exceptions and ordered that the original July 21, 1993 order be entered as a final order. From this order the Follansbee great-grandchildren and the Guardian *ad Litem* filed their respective appeals.

Subsequent to the order of September 17, 1993, and the taking of appeals therefrom, the court below issued another opinion and order on December 8, 1993, in an apparent effort to clarify the earlier rulings.[5] From this order, the appeal docketed at No. 130 Pittsburgh 1994 was filed. This appeal was brought by another group of great-grandchildren, Edward B. Meyer, III, and Margaret Meyer Seybolt.[6]

In resolving these various appeals, we shall first attend to the matters appealed at No. 1560 Pittsburgh 1993 and No. 1609 Pittsburgh 1993. The issues raised therein all pertain to the same matter and may be dealt with jointly. We shall thereafter decide the matter raised at No. 130 Pittsburgh 1994. We turn now to the heart of the dispute before us.

■ Although the various parties have couched the central point of contention in various ways, there is really only one matter of concern instantly; simply, the parties to this appeal ask us to determine what group of persons is included in the term "issue" as it is used in paragraph First (e) of the settlor's Trust Agreement. Our resolution of this matter will dramatically affect the size of the shares of each of the beneficiaries of the McCargo Trust.

Appellants, the Follansbee great-grandchildren and the Guardian *ad Litem*, argue that "issue" is employed in its

5. On February 15, 1994, the court issued yet another clarifying opinion.

6. Like the Follansbee great-grandchildren, these two great-grandchildren trace their lineage through a deceased grandchild-parent, although they apparently did not join the Follansbee position in the declaratory judgment action.

technical sense, including all persons, of multiple generations, who have descended from a common ancestor. In this sense, if a settlor spoke of "the issue of my children" he would implicate all descendants of his children including grandchildren, great-grandchildren, great-great-grandchildren, *et cetera*.

Appellees, on the other hand, contend that "issue," as utilized in paragraph First (e), was used by the Settlor in a more limited sense; appellees maintain that "issue," as used by the settlor, was intended to include only the next generation. In this sense, if a settlor spoke of "the issue of my children," he would describe only his grandchildren and would not include following generations. The trial court found appellees' position to be the correct interpretation.

Our resolution of this question must begin with an examination of the language of the Trust Agreement paragraph in question. Because it is helpful to our cause, we reproduce paragraph First (d) in addition to paragraph First (e), the paragraph in question:

(d) [1] On the death of any of my said children leaving lawful issue surviving, such lawful issue shall take, in equal shares if more than one, the share of the income which his, her or their mother or father was receiving at the time of death, until the termination of the trust as hereinafter provided. [2] On the death of any of my said children without lawful issue surviving, the income from this trust estate shall thereafter be paid to my wife and children in equal shares. [3] However, the lawful issue of any deceased child shall take the share the parent would have taken if living.

(e) [1] On the death of the last survivor of my wife and children, the trust shall thereafter continue for a period of twenty-one (21) years for the benefit of the lawful issue of all of my said children, and the income therefrom shall be paid to them in convenient installments, at least quarterly, per capita and not per stirpes. [2] At the expiration of such twenty-one (21) year period the trust shall cease and determine and the corpus and accumulated income be

distributed, in equal shares, among the lawful issue of my said children who were receiving income at the time of the termination of the trust. [3] If any of the lawful issue of my said children shall die during the time he or she is receiving income from this trust and be survived by lawful issue, then such latter lawful issue shall take, in equal shares if more than one, the share of the income which his, her or their father or mother was receiving at the time of death, until the termination of the trust as above provided, and on the termination of the trust such latter lawful issue shall take that proportionate part of the corpus of the trust estate equivalent to the proportionate part of the income from the trust which they were receiving at the termination of the trust. [4] If any of the lawful issue of my said children shall die during the time he or she is receiving income from this trust without leaving children surviving, the share of the income which such lawful issue was receiving shall thereafter be distributed equally among all my grandchildren; but if any great-grandchild die during the time he or she is receiving income from the trust, his or her share of the income shall thereafter be paid to his or her brothers and sisters in equal shares, and on failure of such brothers and/or sisters shall be paid to all of my grandchildren in equal shares and the lawful issue of any deceased grandchild per stirpes and not per capita.

Trust Agreement, paragraphs First (d) and First (e) (sentence numbers added).

Our interpretation of the term "issue" is of paramount importance. The last child of Grant McCargo is now deceased, and the operation of paragraph First (e) is imminent. With trust assets currently valued in excess of $50 million and with an annual income of $2 million, the share of even descendants far removed is substantial.

Paragraph First (e) calls for equally divided payments to the beneficiary class for twenty-one years following the death of the last child of the settlor, followed by distribution of the corpus to the beneficiaries according to their current income

share. According to appellants' interpretation, the beneficiary class of the trust should include, and the income/corpus should be divided equally among, the settlor's six living grandchildren and those seven great-grandchildren [7] who have survived their deceased grandchildren-parents. Under this scheme appellant Follansbees' shares would be one-thirteenth each.

Appellees argue, to the contrary, that the beneficiary class includes only the eight grandchildren who survive, or who died but left offspring. Appellees maintain that great-grandchildren only receive a *per stirpes* share of their deceased grandchild-parent's original one-eighth share. Under this scheme, the Follansbee appellants would each receive only one-fifth of their mother's one-eighth share, or one-fortieth. This is substantially diminished from a one-thirteenth share. Thus, having framed the argument and the stakes as best we can, we move on to our analysis.

"It is still hornbook law that the polestar in every trust (and in every will) is the settlor's (or testator's) intent and that intent must prevail." *In Re Trust Estate of Pew,* 411 Pa. 96, 106, 191 A.2d 399, 405 (1963), *overruled in part, on other grounds, Estate of Tyler,* 474 Pa. 148, 377 A.2d 157 (1977). Borrowing from our jurisprudence on wills, we may further elaborate:

' "It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language con-
distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, of the testator's intent is for any reason uncertain: *Dinkey Estate,* 403 Pa. 179, 168 A.2d 337; *Pruner Estate,* 400 Pa. 629, 162 A.2d 626; *Wanamaker Estate,* 399 Pa. 274, 159 A.2d 201; *Hope Estate,* 398 Pa. 470, 159 A.2d 197." '

7. The Follansbees, Margaret Meyer Seybolt, and Edward Bailey Meyer, III.

*Estate of Felice,* 487 Pa. 342, 351–52, 409 A.2d 382, 386–88 (1979), *quoting In re Estate of Lewis,* 407 Pa. 518, 520, 180 A.2d 919, 920 (1962).

Upon reading and re-reading both the contested paragraph First (e) of the Trust Agreement, as well as the Trust Agreement in whole, we believe that the language of the document is utterly ambiguous and lends itself to the interpretations espoused by both appellants and appellees. Both interpretations, however, lead to semantical and logical conundrums.

For example, if we interpret "issue" as appellants wish, in its broad or technical sense meaning all succeeding generations, then paragraph First (e), first sentence would appear to grant equal income shares to the fifty-five issue of all of Grant McCargo's children then living at the time of the death of the last child. We disagree with appellants' position that this class is restricted to the six surviving grandchildren and seven great-grandchildren whose parents have already died. This seems to be a strained effort to exclude other great-grandchildren and great-great-grandchildren from sharing in the initial income distribution. Nothing in paragraph First (e) limits a broad reading of "issue" to only those descendants receiving income at the time of David McCargo's death.

Also by this sentence, it appears that the class of beneficiaries would remain open for twenty-one years, allowing for the diminishment of relative income shares as more issue are born. This scheme seems inherently at odds with the remaining provisions of paragraph First (e), which seem to envision a *per stirpes* distribution to those issue beyond the degree of grandchildren. We also note the apparent interchangeable usage of issue and children by the scrivener,[8] as well as the

---

8. The Restatement (Second) of Property describes the conclusion that is to be drawn from such usage:

> The word 'issue' may be used to denote 'children' of the designated person. The inexpert use of technical language may be evident by the use of the words 'issue' and 'children' interchangeably, justifying the conclusion that only the first lower generation of the designated person is intended to be beneficiaries of the disposition.

Restatement (Second) of Property, § 25.9, comment d. *See also Duckett's Estate,* 214 Pa. 362, 63 A. 830 (1906).

employment of concepts such as issue survived by lawful issue. None of this supports the idea that the scrivener employed "issue" in its technical sense.

On the other hand, if we accept appellees' position that "issue" is being used in the very narrow sense of only the immediately following generation, we are faced with another predicament. If the meaning of issue is restricted to the next generation in paragraph First (e), then it must also be so restricted in paragraph First (d), because of a rule of construction that teaches, "words which appear repeatedly in a will are used consistently throughout." *In Re Estate of Hamilton,* 454 Pa. 495, 504, 312 A.2d 373, 377 (1973). *See also Blackburne's Estate,* 290 Pa. 55, 138 A. 538 (1927). Thus, when child Margaret McCargo Meyer Crane died in 1990, she died without issue, because the only member of the immediately following generation, her son Edward Bailey Meyer II, predeceased her in 1988. Therefore, by operation of paragraph First (d), sentence two, the income share of child Margaret McCargo Meyer Crane should have been given to the sole survivor among her mother and siblings, brother David McCargo.[9] We note that this same scenario occurs with respect to the Follansbee appellants, whose McCargo mother predeceased her father, David McCargo.

Faced with such an intrinsic dichotomy, we conclude that there is simply no way to discern the meaning of "issue," as it is used in the Trust Agreement, relying solely upon the language of the document itself.

**9.** Instead, the Orphans' Court of Allegheny County awarded the income to the surviving grandchildren of Margaret McCargo Meyer Crane after her death in 1990. While we are without the trial court's opinion from that time, appellants imply that this result could only have been reached by interpreting "issue" as it is employed in paragraph First (d), in its technical, broad sense, to include all descendants of multiple succeeding generations. Appellees argue that an equally likely explanation is that the trial court interpreted the words "deceased child" in paragraph First (d), sentence three to mean any child and not just a child of the settlor. However, there is also nothing to preclude an interpretation that the trial court looked to the overall scheme of distribution as set out by the settlor/testator and preserved the *per stirpes* shares of the lineal descendants of the settlor/testator's children.

Appellants attempt to maintain that, "[i]t is clear from a reading of the document in its entirety, that the Settlor's intent was that wherever a distribution to "issue" is called for, descendants will not take concurrently with. a living McCargo parent." Follansbee appellants' brief at 27. We do not agree. Our reading of the Trust Agreement leads to no such conclusion. In fact, we read appellants' suggested analysis, wherein "issue" does not mean issue at all, but includes grandchildren and only seven great-grandchildren, as essentially an "admission" of the ambiguity of the Trust Agreement.

■ As the trial court did before us, we must look to extrinsic evidence in order to determine the intent of the settlor. Because we are confronted by a manifestly ambiguous document, we may consider such extrinsic evidence. *In Re Estate of Pyle*, 391 Pa.Super. 244, 570 A.2d 1074 (1990), *allocatur denied, Petition of Bannan*, 527 Pa. 584, 588 A.2d 507 (1991), *Matter of Estate of Pyle*, 527 Pa. 588, 588 A.2d 510 (1991). We believe it is quite revealing to examine the settlor's Will in our attempt to discern his intention as to the meaning of "issue" as used in the Trust Agreement. We observe again that the settlor's Will was prepared by the same scrivener as prepared the Trust Agreement and that the preparation of both documents was more or less contemporaneous.[10]

The Will of Grant McCargo created a testamentary trust for the benefit of his wife and children quite similar in structure to the *inter vivos* trust currently under our review. Our attention is drawn to paragraph Fourth (f), which operates in a manner similar to paragraph First (e) of the Trust Agreement:

(f) The distributions of income to my wife, children and grandchildren hereinabove provided for shall continue until the death of the last survivor of my wife, MARY GRAHAM McCARGO, and my children, MARGARET McCARGO MEYER, ELEANOR McCARGO, GRAHAM

---

**10.** One document was executed December 3, 1929, while the other was executed one day later, December 4, 1929.

McCARGO and DAVID McCARGO. On the happening of such event the amounts of principal carried in the separate trust funds above provided for shall be combined into one principal account, and thereafter the same shall be invested and reinvested and the net income therefrom (after taking into consideration payments of income which it may be necessary to make to the surviving widow of either or both of my sons GRAHAM McCARGO and DAVID McCARGO as provided in clauses (d) and (e) above) shall be paid, in convenient instalments at least quarterly, to the surviving lawful issue of my children in equal shares and the children of any deceased lawful issue, such latter children taking, however, in equal shares if more than one, only the share of the income which his, her or their parent would have taken if living. Payments of income shall thus continue until the youngest surviving issue of my children, that is, my youngest surviving grandchild, shall attain the age of twenty-one (21) years, when the trust shall cease and determine, and the principal and accumulated income thereof shall be paid, freed and discharged of the trust, to the surviving lawful issue of my children and the children of any deceased lawful issue in the same proportions in which they were receiving income at the termination of the trust.

Will at 5.

The distributive scheme evinced by the above paragraph describes a distribution very similar to that of the trust created by the Trust Agreement, but in language that is not nearly so ambiguous.[11] The Will demonstrates the clear in-

---

11. This is further borne out by earlier provisions of the settlor/testator's Will wherein he displays a clear intent to provide for the lineal descendants of his children on a *per stirpes* basis:

Upon the death of my daughter MARGARET McCARGO MEYER the income from said trust fund shall be distributed equally among her surviving lawful issue and the children of any deceased lawful issue, the latter children taking, in equal shares if more than one, the share of the income which his, her or their parent would have taken if living. Said payments of income shall continue until the change in distribution of income provided for in clause (f) of this paragraph of

tent of the settlor/testator. The Will set up five "mini-trusts" for the benefit of his wife and four children. As each of the children died, the grandchildren, or their children if the grandchildren predeceased, were to succeed to *per stirpes* shares of the mini-trusts. Upon the death of the last survivor of the mother and children, however, a new distributive scheme was to fall into place.

Upon that event, the mini-trusts were to merge into a greater whole. Then the grandchildren class were directed to move up into *per capita* income shares rather than their prior *per stirpes* shares under the mini-trust provisions. In this testamentary trust, the settlor/testator made clear that great-grandchildren and great-great-grandchildren could also succeed to income shares, but only on a *per stirpes* basis. What Grant McCargo, settlor, failed to make clear, Grant McCargo, testator, made abundantly obvious.

Furthermore, as both the trial court and appellees have pointed out, the Will of Grant McCargo provides, in the third sentence of paragraph Fourth (f), a rather decisive indication of what was meant by the settlor/testator when he employed the term "issue of my children:"

Payments of income shall thus continue until the youngest surviving issue of my children, *that is, my youngest surviving grandchild,* shall attain the age of twenty-one (21) years, when the trust shall cease and determine, ...

Will at 5 (R.R. 137a) (emphasis added). We can see no more obvious indication than this that when the settlor/testator referred to "issue of any children," he only included the next generation, his grandchildren, in its meaning. This same

my will. In the event that my said daughter leaves no children *or other lineal descendants* to survive her, then on her death the principal of said trust fund shall be divided equally and added to the trusts herein created for my other children, to be administered and distributed in accordance with the terms thereof.
Will at 2 (from paragraph Fourth (b), emphasis added). Similar provisions were made for each of the testator's children and said provisions are markedly similar to the anti-lapse provisions of the Trust Agreement, as described in paragraph First (e), sentences three and four.

interchangeability of language also appears in paragraph First (e) of the Trust Agreement.

Appellant Guardian *ad Litem* argues that the purpose of this limitation was to avoid violating the Rule Against Perpetuities. While this may be perfectly true, that fact does not detract from this obvious usage of "issue of my children" by the scrivener to refer only to the next generation, the grandchildren of the settlor.

■ We now turn to consider sundry arguments raised by the various appellants, either alone or in concert. First, appellant Guardian *ad Litem* argues that when used in a will or trust technical words must be given their technical meaning especially when used by a scrivener learned in probate law. Appellant Guardian *ad Litem* string cites several cases in support including *Grier Estate*, 403 Pa. 517, 525, 170 A.2d 545, 549 (1961). While this is a true statement of law, it is also true that where it is apparent that such technical terms have been misused or given a meaning different from their fixed technical sense, effect must be given to the intent of the testator (or settlor) gathered from the writing as a whole. *In Re Suttner's Estate*, 348 Pa. 159, 34 A.2d 483 (1943). Grant McCargo repeatedly used the term "issue" in a sense that clearly connoted a meaning more restrictive that the technical sense of the term; that is, he apparently intended "issue" to mean only the next succeeding generation rather than all succeeding generations *ad infinitum.*

Further, we note that appellant Guardian *ad Litem* has devoted a large portion of his brief to a discussion of *In Re Carnegie's Estate*, 397 Pa. 308, 155 A.2d 349 (1959), and *In Re Clark's Estate*, 359 Pa. 411, 59 A.2d 109 (1948). If these two cases stand for any principle, it is that technical words will not be given their technical meaning where settlor or testator has intended a different meaning. In both cases, the narrow technical term "children," which commonly implies a single generation, was interpreted by the court in the much broader sense of "issue," multiple succeeding generations, because the court determined that that was, in fact, the testator's intent.

We do likewise here where we decide that the settlor intended "issue" in the narrower sense of "children" (of his children).

■ Appellants also argue that a trust instrument must be construed so as to give meaning and effect to every word and that a construction which renders any of the words futile or nugatory must be rejected, citing, *inter alia, Estate of Rush,* 426 Pa.Super. 119, 626 A.2d 602 (1993). We agree that this accurately states the law.

Appellants go on to argue that their interpretation of "issue" as it is used in paragraph First (e) gives meaning to the phrase *"per capita* and not *per stirpes"* as it is employed in the first sentence of paragraph First (e) because it reverses the presumption in the law that a gift to a class comprised of individuals from different generations is a gift *per stirpes. See In Re Mayhew's Estate,* 307 Pa. 84, 160 A. 724 (1932). Appellant Guardian *ad Litem* contends that interpreting "issue" in sentence [1] of paragraph First (e) to mean only grandchildren renders *"per capita* and not *per stirpes* futile because, as appellant correctly indicates, a gift to grandchildren alone as a class presumes a *per capita* gift. *See In Re Rosengarten's Estate,* 349 Pa. 32, 36 A.2d 310 (1944). Thus, appellant Guardian *ad Litem* argues, the phrase *"per capita* and not *per stirpes"* is superfluous.

Ordinarily, appellants' argument would have merit. However, appellants have ignored the fact that under paragraph First (d), the Trust Agreement indicated that the grandchildren would receive a *per stirpes* share prior to the death of the settlor's last child. Therefore, assuming that "issue" in sentence [1] of paragraph First (e) meant grandchildren only, *"per capita* and not *per stirpes"* would still have meaning because it altered the distributive scheme of paragraph First (d), giving grandchildren a *per capita* share rather than a *per stirpes* one upon the death of the settlor's last child.

Our analysis thus far has led us to the conclusion that the order entered September 17, 1993, should be affirmed. This resolves the matters appealed at No. 1560 Pittsburgh 1993 and No. 1609 Pittsburgh 1993. The final matter to which we must

attend is the order entered December 8, 1993, and appealed at No. 130 Pittsburgh 1994. We believe that this order was improperly entered and must be vacated.

 The order of December 8, 1993, was improper on three accounts. It was improper because it was entered more than thirty days beyond the original order. *See* 42 Pa.C.S.A. § 5505, *First Pennsylvania Bank v. National Union Fire Insurance Company*, 397 Pa.Super. 612, 619 n. 2, 580 A.2d 799, 803 n. 2 (1990), and *Simpson v. Allstate Insurance Company*, 350 Pa.Super. 239, 504 A.2d 335 (1986). The order was also improper because it was entered after two appeals had been taken from the original order. *See* Pa.R.A.P. 1701(a), 42 Pa.C.S.A. Both of these reasons vitiate the jurisdiction of the court below to act.[12] Further, the order was improper because it purported to resolve a matter by declaratory judgment that was not based upon an event certain to occur. (There was no certainty that a great-grandchild would die during the twenty-one-year income period described in paragraph First (e).) "A declaratory judgment must not be employed to determine rights in anticipation of events which may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic." *Gulnac v. South Butler School District*, 526 Pa. 483, 488, 587 A.2d 699, 701 (1991); *see also In Re Johnson's Estate*, 403 Pa. 476, 171 A.2d 518 (1961). The court should not have attempted to resolve the proper distribution of a great-grandchild's lapsed share.[13]

12. Appellee Guardian *ad Litem* has questioned the standing of appellants to appeal the order on the basis that they are not aggrieved parties, citing *Green by Green v. SEPTA*, 380 Pa.Super. 268, 551 A.2d 578 (1988), and referring to Pa.R.C.P. 227.1, 42 Pa.C.S.A. and Pa.R.A.P. 501, 42 Pa.C.S.A. Even assuming a lack of standing to appeal, this court may *sua sponte* raise matters of lack of jurisdiction. *See Weir v. Weir*, 428 Pa.Super. 515, 631 A.2d 650 (1993).

13. Although we neither need to, nor actually do resolve the matter of the proper distribution of such a lapsed share, we note in passing that the resolution of the trial court embodied in the order of December 8, 1993, does appear to be in error. The clear implication of the latter clause of sentence [4] of paragraph First (e) is that it applies only where the great-grandchild dies without issue. We deem this interpretation to flow from foregoing analysis, and to be consistent with the distributive

Accordingly, the order of September 17, 1993, is hereby affirmed. The order of December 8, 1993, is hereby vacated.

scheme envisioned by the settlor/testator as expressed in both his Trust Agreement and Will.