688 A.2d 1185

In re ESTATE OF Kenneth C. HEWITT, Deceased.

Appeal of The COMMONWEALTH of Pennsylvania, Through
its Attorney General, Thomas W. CORBETT, Jr.

Superior Court of Pennsylvania.

Argued Oct. 31, 1996.

Filed Dec. 16, 1996.

Reargument Denied March 13, 1997.

Rita J. Cindrich, Pittsburgh, for appellants.

G. Donald Gerlach, Pittsburgh, for appellee.

Before TAMILIA, JOHNSON and BROSKY, JJ.

TAMILIA, Judge.

The Commonwealth of Pennsylvania, through its Attorney General, appeals from the March 6, 1996 decree dismissing its exceptions to and making final the October 2, 1995 Order directing Helen Colwell, co-executor of the estate of appellee Kenneth C. Hewitt and life tenant of the realty in question, to place the proceeds from the sale of said realty in trust for Colwell's lifetime. The decree further directed that upon Colwell's demise the corpus would pass to specified charities in accordance with terms of Hewitt's will.

Appellant contends the court erred by directing the proceeds be held in trust pursuant to 20 Pa.C.S. § 6113, **Limited estates in personalty and in the proceeds of the conversion of real estate,** instead of distributing the money through the residuary clause to the testator's already existing charitable remainder unitrust (CRUT). Appellant avers testator did not

intend to allow Colwell to convert her life estate into cash and, moreover, did intend that the proceeds from the sale of the condominium would pass through the residuary clause of his will to the CRUT. Lastly, appellant argues the trial court's directive that a separate trust be created in which to deposit Colwell's proceeds from the sale, rather than depositing the sum in the CRUT, resulted in unfavorable tax consequences.

■ With minimal caselaw to consider, we are guided by the polestar that the testator's intent is paramount. See *Deed of Trust of Grant McCargo*, 438 Pa.Super. 570, 652 A.2d 1330 (1994), reargument denied, January 27, 1995. Decedent's will, dated January 2, 1991, provided Helen Colwell, his constant companion and confidant beginning in 1980, with a life estate in his apartment.[1] The decedent, who died on December 17, 1992 and was a retired senior vice-president of Mellon Bank's trust department, appointed Colwell and Mellon Bank as his co-executors. Decedent's original trust was created in 1961 and thereafter amended in 1985, 1990 and 1991. Pursuant to the 1991 amendment, a unitrust was created (CRUT) naming Colwell, if she survived settlor, as a beneficiary and, upon her demise, distributing any remaining money to Princeton University, Harvard Business School, Mercersburg Academy, Allegheny General Hospital and the East Liberty Presbyterian Church. Hewitt's 1991 will also directed that upon Colwell's demise the proceeds from the sale of the apartment were to be included in his residuary estate and distributed to the charitable institutions as set forth in Article III, entitled Colwell–Hewitt Unitrust.

It is clear from the testator's will, trust, and amendments thereto, Hewitt's primary concern was to care for his friend Colwell and, following her demise, distribute what remained of his estate to specified charities. Contrary to appellant's position, it is obvious Colwell was the primary object of the testator's bounty. Colwell expressed her intent to accept the life estate but then, along with co-executor Mellon Bank, exercised their statutory right to sell the real estate in ques-

1. Although referred to as an apartment, decedent actually owned the real estate in question.

tion. The problem arises with the distribution of the sale proceeds of $155,000. The executors distributed $76,199.55 to Colwell, said amount representing the calculated value of her life estate, using a factor of .50839. This amount was ordered deposited in a trust, to be used for Colwell's benefit during her lifetime and upon her demise, to pass outright to the charities. The remaining proceeds from the sale, $78,800.05 was added to the corpus of the CRUT to be held by Colwell as trustee and beneficiary for her lifetime and to thereafter pass to charities. The question before us is whether Colwell's life interest should have been reduced to a dollar amount and held in a separate trust other than the CRUT.

The factual scenario with which we are faced is unique in that life tenant and co-executor authorizing the sale are one and the same. In a fairly recent case, *In re Salvia's Estate*, 12 Fiduciary 2d 115 (1992), the court found the widow/life tenant, with the co-executors' cooperation, could sell the realty and enjoy the net proceeds with the amount remaining at her death to pass to their children in accordance with husband's will. In *Salvia*, as here, the testator's intent has been satisfied. In the matter before us, Colwell's current day-to-day needs are being satisfied as the testator so desired, and the charities will receive that which remains following Colwell's death. Appellant has provided this Court with no support for its argument the life tenant was prohibited from selling her life estate. Accordingly, in the spirit of the principles encouraging the free alienation of realty and the implementation of the testator's intent, we agree appellee was entitled to sell her interest in the Hewitt realty. Having allowed the sale, the court nonetheless recognized its obligation to carry out the testator's intent to safeguard the beneficiaries' interests and directed the proceeds from the sale to be placed in trust for the benefit of the trust beneficiary (Colwell) and the charitable remaindermen. The court directed the proceeds from the sale of the life estate, which was in reality "sold" to the estate which resold the apartment outright, be placed in a separate trust for Colwell's lifetime with any remaining funds to pass through the residuary to the

charities indicated. Because the settlor's ultimate intent has been satisfied, we agree the trial court neither abused its discretion nor committed an error of law by allowing the proceeds to be placed in a trust other than the CRUT. See 20 Pa.C.S. § 6113.

As to any alleged negative tax consequences, because we agree the testator's general intent has been satisfied, the tax consequences flowing from the placement of the proceeds from the sale of the decedent's realty are legitimate. The remaindermen are entitled to receive that which remains after the needs of Colwell, testator's primary beneficiary, have been satisfied. Nothing has been done to defeat that end.

Having found appellant's arguments devoid of merit, we affirm the decree entered March 6, 1996.

Decree affirmed.

JOHNSON, J., dissents.

JOHNSON, Judge, dissenting.

I cannot agree with the Majority when it states that the trial court did not err in permitting the proceeds from the sale of Hewitt's apartment to be placed in a separate trust. Rather, I find that the will does not give Mrs. Colwell any interest in the proceeds from such a sale. I therefore find that section 6113 of the Decedents, Estates and Fiduciaries Code (the Code) is inapplicable to this case. Hence, this dissent.

As the Majority neglects to include the pertinent section of Hewitt's will in its Opinion, I include it here.

### ARTICLE II

#### Tangible Personal and Real Property

(A) I give to HELEN C. COLWELL, if she survives me by 30 days, all tangible personal property owned by me at the time of my death, including any policies of insurance thereon. In the event the said HELEN M. COLWELL does not survive me by 30 days, I devise and bequeath to such of her children, COMLY COLWELL WATTERS,

MILES O. COLWELL, JR. and ANNE COLWELL FINNEY, as may survive me, so much of such property as they may each select and any unselected items shall be sold and the proceeds shall be distributed as part of my residuary estate.

(B) I give to HELEN M. COLWELL, if she survives me by 30 days, for her life, my interest in real property located at 302 Fox Chapel Road, Pittsburgh, Pennsylvania 15238, being Apartment No. 309 in Fox Chapel Mews II; provided, however, that Mrs. Colwell shall advise my Corporate Executor of her election to occupy my apartment within 120 days following my death. Mrs. Colwell may occupy my apartment without bond and without liability for waste; provided, however, that she shall keep such apartment adequately insured, maintained and repaired and shall pay all real estate taxes, water and sewer rents, assessments, carrying charges and similar charges thereon. *Upon Mrs. Colwell's death,* or if she should predecease me, upon my death (i) *such apartment shall be sold* and the net proceeds distributed as part of my residuary estate as set forth in Article III.

Will of Kenneth C. Hewitt, dated January 2, 1991; R.R. at 3a–5a (emphasis added).

The will's residuary clause provides for adding the remainder of the estate to the Kenneth C. Hewitt Trust (hereinafter, "the Trust"). Upon Hewitt's death, the Trust would disburse $300,000 to Mrs. Colwell from the corpus, with the remainder being rolled into the Colwell–Hewitt Unitrust. Mrs. Colwell receives 6% of the income from the Unitrust during her life and, upon her death, the Unitrust proceeds will be distributed, in various percentages, to Princeton University, Harvard University, Mercersburg Academy, Allegheny General Hospital and the East Liberty Presbyterian Church. The trustees of the Unitrust were given the power to amend the Unitrust at any time if necessary to ensure that the Unitrust continued to qualify as a charitable remainder unitrust and receive the concurrent tax advantages. *See* Second Amendment to Amended and Restated Trust Agreement, dated January 2, 1991; R.R. at 12a–25a.

Hewitt died on December 17, 1992. The first and final account of Hewitt's estate was filed by his executors, Mrs. Colwell and Mellon Bank, on August 11, 1994. *See* R.R. at 28a–51a. In this account, the estate had a total value, prior to any disbursements, of $619,461.27. The estate paid the decedent's debts, funeral expenses, administration expenses (including electric bills for the apartment, condominium association fees, and property repairs on the apartment), attorney fees, executor fees, and a total of $418,497.25 in federal and state taxes. The estate received a total of $304,310.00 from the Trust to assist in paying these taxes. After these expenses, a balance of $142,003.59 remained in the estate for distribution to the beneficiaries. Of this remaining amount, Mrs. Colwell received $58,752.00 worth of household goods, certain country club certificates valued at $1.00, and $76,199.55 in cash. This last amount is what Mrs. Colwell received as a portion of the proceeds from the sale of Hewitt's apartment; the executors characterized this as representing the "value" of Mrs. Colwell's life estate as calculated by multiplying the "life estate factor," .50839, with the net proceeds from the sale of the real estate (sold for $155,000 on August 26, 1993). Thus, Mrs. Colwell received a total of $134,952.55 as a beneficiary of Hewitt's estate, and a balance of only $7,051.04 remained to be added to the Trust as a part of the residuary estate.

In addition to these testamentary bequests, Mrs. Colwell was a primary beneficiary of the Trust. Mrs. Colwell was scheduled to receive a distribution of $300,000 from the Trust at Hewitt's death prior to the trust corpus being rolled into the Colwell–Hewitt Unitrust. On January 14, 1993, Mrs. Colwell filed a disclaimer with the Orphans' Court, disclaiming one-half of her interest in this bequest from the Trust in favor of the alternate beneficiaries, her three children. Thus, Mrs. Colwell received $150,000 from the Trust and each of her children received $50,000. As the remaining assets are now a part of the Unitrust that provides Mrs. Colwell with income for the duration of her life, the charitable beneficiaries have yet to receive their bequests.

The Commonwealth, through the Attorney General, acting in his capacity as *parens patriae,* filed exceptions to the final accounting of Hewitt's estate. The Attorney General asserted that Mrs. Colwell should not have been permitted to sell the apartment and retain a portion of the proceeds of such sale for her own benefit. In addition, the sale of the apartment and the distribution of the proceeds to Mrs. Colwell created adverse tax consequences for the estate; the Attorney General asked the court to order Mrs. Colwell to pay these additional taxes. Finally, the Attorney General maintained that the calculation of the life estate factor was in error. On October 2, 1995, the Honorable Paul R. Zavarella of the Court of Common Pleas, Allegheny County Orphans' Court division, held that the sale was proper and that the proceeds of the sale should be placed in a new and separate trust, with Mrs. Colwell as trustee of the proceeds for her life, and, upon her death, distribution of the remainder of the proceeds to the charities.

The Attorney General filed exceptions to Judge Zavarella's Order. Following a hearing before the Orphans' Court *en banc,* the Honorable Robert A. Kelly dismissed the Attorney General's exceptions and made final Judge Zavarella's October 2, 1995, Order. The Attorney General then raised his claims of error before this Court.

The testator's will is paramount to our evaluation of this case. While the testator's intent is the polestar to the evaluation of a will, *In re Deed of Trust of McCargo,* 438 Pa.Super. 570, 652 A.2d 1330 (1994), *appeal denied,* 543 Pa. 693, 670 A.2d 141 (1995), that intent must be gathered from a consideration of the language contained in the four corners of the will, together with the facts and circumstances surrounding the will's execution. *Id.; Estate of Felice,* 487 Pa. 342, 409 A.2d 382 (1979). Only if the intent of the testator does not appear with reasonable certainty from the face of the entire will and its attendant circumstances will the court resort to canons of construction. *Flaggs's Estate,* 501 Pa. 38, 459 A.2d 740 (1983). " '[I]t is not what the Court thinks [the testator] might or would or should have said in the existing circumstances, or

even what the Court thinks he meant to say, but what is the meaning of his words.'" *Felice, supra,* at 352, 409 A.2d at 387, quoting *In re Houston's Estate,* 414 Pa. 579, 586, 201 A.2d 592, 595 (1964) (emphasis deleted).

The Majority, following Judge Zavarella's lead, maintains that after Mrs. Colwell accepted the life estate in the apartment, she, along with Mellon Bank, "exercised their statutory right to sell the real estate in question." Maj. Op. at 458–59; Orphans' Court Opinion and Order, dated October 2, 1995, at 6. I have found no statute which grants any such authority. *Cf.* 20 Pa.C.S. § 3353. Although I will assume for the purposes of this discussion that the sale of the apartment was proper, I strongly disagree with the assumption that the sale was authorized by statute as well as the ultimate conclusion that Mrs. Colwell is entitled to share in the proceeds from that sale.

Moreover, I note that the Majority baldly asserts that Mrs. Colwell's interest in the proceeds from the sale are calculated by multiplying the "life estate factor" with the net proceeds from the sale. This "life estate factor," the multiplier of .50839, is used by both Judge Zavarella and the Majority without any explanation of its derivation. Nowhere in the certified record is it explained why this multiplier was used. In fact, I have been unable to determine through my independent research how this multiplier was formulated. Using tables that calculate the present value of a *future interest,* which may be found in any introductory accounting or financial textbook, and assuming a life expectancy of 10 years and an interest rate of 7%, the factor of .508349 arises. I assume that these or similar tables were used in valuing Mrs. Colwell's life estate. However, I cannot countenance the use of this multiplier without any explanation. I do not understand the life estate here involved to constitute a future interest. Because I conclude that Mrs. Colwell's interests in the apartment do not include the proceeds from its sale, however, my analysis does not necessitate the use of this or any other multiplier. I note my disapproval of its use in this case without explanation and without citation to any authority.

The Majority compares this case to *In re Salvia's Estate*, 12 Fiduciary 2d 115 (Orphans' Court of Bucks County, 1992). In *Salvia*, the testator devised a life estate in his home to his wife. The will then directed that, upon the wife's death, or at the time she no longer used the premises as a home for herself, the property should be sold and the proceeds distributed to the wife if she was still living, and if not, to the testator's grandchildren. *Id.* at 116. Thus, in *Salvia*, the will specifically granted the life tenant the power to change the nature of the property in which she held her life interest; the will enabled the wife to sell the home and maintain a life estate in the proceeds from the sale. Here, Hewitt's will directs the property to be sold *at Mrs. Colwell's death.* Hewitt's will, therefore, grants Mrs. Colwell a life estate but *does not* give her any interest in the proceeds from the sale of the property; it does not even contemplate a sale while Mrs. Colwell is still alive. I therefore conclude that *Salvia* is inapposite to the instant case.

The Majority also claims that support for its decision lies in Section 6113 of the Code. This section, however, does not apply to this case. That section sets forth, in its entirety:

A person having a *present interest in personal property, or in the proceeds of the conversion of real estate,* which is not in trust, and which is subject to a future interest, shall be deemed to be a trustee of such property, and not a debtor to the remainderman, with the ordinary powers and duties of a trustee, except that he shall not be required to change the form of the investment to an investment authorized for Pennsylvania fiduciaries, nor shall he be entitled to compensation as trustee. Such person, unless given a power of consumption or excused from entering security by the terms of the conveyance, shall be required to enter such security for the protection of persons entitled to the future interests as the court in its discretion shall direct. If a person having a present interest shall not enter security as directed, the court shall appoint a trustee who shall enter such security as the court shall direct, and who shall exercise all the ordinary powers and duties of a trustee, except that he shall

not be required to change the form of the investment to an investment authorized for Pennsylvania fiduciaries.

20 Pa.C.S. § 6113 (emphasis added). Mrs. Colwell has neither a present interest in personal property nor in the proceeds from the conversion of Apartment 309. Mrs. Colwell merely held a life estate in the *apartment.* As stated above, the will is silent about her interest in the proceeds of any sale because it contemplates that such a sale only occur at Mrs. Colwell's death. Thus, the only conditions under which Section 6113 become operative—a present interest in personal property or the proceeds from the conversion of real estate—are not present in this case, and this section is inapplicable to our determination here. Moreover, Section 6113 provides no support for the *sale* of the property, since it only addresses the status of a trustee following sale.

The Majority declares that Hewitt's intent was "obvious," that Mrs. Colwell was the primary object of his bounty. Maj. Op., *supra,* at 458. However, from the terms of Hewitt's will, it is clear that Mrs. Colwell's interest in relation to the apartment was limited to the property itself, and that the residuary legatees were intended to benefit from this property at her death. The will devises the property to Mrs. Colwell to permit her to occupy it during her life, and retains a remainder interest in Hewitt's estate for the benefit of the residuary legatees. The terms of Hewitt's will thus limited Mrs. Colwell's interest to the realty. By the plain meaning of Hewitt's words, it is impossible for Mrs. Colwell to have an interest in the proceeds of this sale. I do not dispute that, once Mrs. Colwell declared her intention to live in the apartment within 120 days of Hewitt's death, she had a valid present interest in the property that could be sold if a purchaser for her life estate could be found. However, my reading of the will necessitates the conclusion that once Mrs. Colwell sold her life interest, her claim to the property terminated and only the residuary legatees, the designated charities, had an interest in the proceeds.

A life estate is a limited interest in the realty involved. "A life tenant is entitled to possession and enjoyment of the

property *as long as the estate endures.* He may convey, lease or otherwise alienate his interest, but he may not disregard the rights of those who take when his life estate ends." 1 John Makdisi, ed., *Ladner on Conveyancing in Pennsylvania,* § 1.03(b) (4th ed. 1979 & Supp.1996)(emphasis added). The life tenant has a present interest in the income from the property; he has the duty to preserve the corpus for the benefit of the remainderman. *See, e.g.,* Restatement of Property § 187 (defining the rights and duties of the holder of a future interest in regards to the holder of a life estate). The remainderman in this case is the estate which holds in favor of the residuary legatees; the legatees thus continue to have an interest in the property and nothing Mrs. Colwell could do would divest them of that interest without their joinder and consent. *See, e.g.,* 20 Pa.C.S. § 3551.

Moreover, Mrs. Colwell as the life tenant has clearly defined liabilities and responsibilities regarding the successors in interest to the real estate. A life tenant's

"use and enjoyment of the premises is limited by the law of waste, that is, he is under a duty to refrain from any act which will diminish the value of the reversion or the remainder if such act is also, under all the circumstances, an unreasonable use of the premises."

*Cronan v. Castle Gas Co., Inc.,* 354 Pa.Super. 381, 391, 512 A.2d 1, 5 (1986) (Popovich, J., concurring), quoting Cornelius J. Moynihan, *Introduction to the Law of Real Property* 59 (1962); Smith and Boyer, *Survey of the Law of Property* 237–39 (1971). Thus, Mrs. Colwell, as the life tenant, cannot legally act in such a manner to diminish the value of the remainder interest.

Mrs. Colwell has not only converted her life interest in the apartment from a property interest into a liquid asset, but she has also transformed the nature of the residuary legatees' interest in the property. I find this troubling. This transformation could have been proper had Mrs. Colwell been given the power to consume the corpus of the estate. In cases where the devisee is granted a power to consume, the will specifically states that the life tenant has the power to liqui-

date the real estate. *See Brennan's Estate,* 324 Pa. 410, 188 A. 160 (1936). No such power was conveyed by the will in this case. Although Mrs. Colwell was given the life estate "without bond and without liability for waste," she is still obligated by the terms of the will to provide insurance, maintenance and repairs, and to pay all taxes, utilities, and similar charges that accrue during her occupancy of the apartment. Based on the will's plain language, I cannot conclude that Hewitt intended to give Mrs. Colwell the power to consume the corpus of the estate or to convert the asset to cash prior to her death. Mrs. Colwell should therefore not be permitted to receive any part of the corpus of the property—in other words, she is not entitled to the proceeds from the sale of the apartment. The only interest that Mrs. Colwell may properly retain is in the income received from the proceeds of the sale, through the Colwell–Hewitt Unitrust. *Cf. Felice, supra* (holding that where the will did not provide the life tenant with the power to sell, and it was not necessary to sell the property for the payment of estate expenses, the life tenant was not entitled to the proceeds from the sale of the property; instead, the proceeds became a part of the residuary estate). Through the terms of the will, the residuary legatees continue to have the right to the entire corpus of the real estate upon Mrs. Colwell's death.

In conclusion, I find that the Majority errs in relying upon Section 6113 of the Code because Mrs. Colwell, as life tenant, was not entitled to any interest in the proceeds from the sale of the apartment. I conclude that the will gives Mrs. Colwell a life estate in the apartment should she desire to live there; it does not give her the ability to convert the apartment into cash and divest the residuary charitable legatees from receiving the full measure of Hewitt's bounty. Because I find that Mrs. Colwell's right to occupy the apartment was terminated by her voluntary sale of the property, I conclude, and would direct, that Mrs. Colwell be required to return the entire proceeds of the sale to the Unitrust as provided by the residuary clause of the will. In my view, Mrs. Colwell's sale of the apartment operated to terminate her interest in the

property—in effect, she has through her actions disclaimed her life estate. In the interests of fairness and equity, I would thus treat her actions as having the effect of her predeceasing Hewitt. *See* 20 Pa.C.S. § 6205(a), (b) ("A disclaimer relates back for all purposes to the date of the death of the decedent.... [T]he disclaimer shall, for the purposes of determining the rights of other parties, be equivalent to the disclaimant's having died before the decedent.") Mrs. Colwell's actions also resulted in almost $40,000 in additional and unnecessary tax liabilities to the estate. This $40,000 was also a part of the corpus of the estate to which the residuary legatees were intended beneficiaries. Because of Mrs. Colwell's failure to fulfill her fiduciary responsibilities to the estate by incurring this unnecessary expense, I would also require her to reimburse the Unitrust in this amount. Mrs. Colwell would still receive a 6% interest in the income from the Unitrust for the duration of her life. I believe this result most closely follows Hewitt's intent as evinced by the will.